**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,  )<br>                          )<br>        Plaintiff,            )<br>                          )<br>v.                        )<br>                          )<br>Paul Zaragoza,            )<br>                          )<br>        Defendant.          )<br>_____) | No. CR 06-1913 TUC FRZ (JM)<br><br>**REPORT AND**<br>**RECOMMENDATION** |

This matter was referred to Magistrate Judge Marshall for all pretrial matters. On May 11, 2007, Defendant Paul Zaragoza filed a Motion to Suppress Evidence [Docket No. 20], asserting that the stop of the vehicle in which he was a passenger was not supported by reasonable suspicion and that the subsequent search was not supported by probable cause. The motion to suppress was heard by Magistrate Judge Marshall on June 28, 2007. Zaragoza was present at the hearing and was represented by counsel. Zaragoza presented the testimony of his investigator, Charles Gallegos, and attempted to elicit testimony from co-defendant Rudy Espinoza, but was unable to do so because Espinoza invoked his right against self-incrimination under the Fifth Amendment. The Government presented the testimony of Border Patrol Agent William Laney. The witness was examined, cross-examined, and questioned by the Court. Having considered the matter, the Magistrate Judge submits the following Findings of Fact and Conclusions of Law and recommends that Defendant Zaragoza's Motion be denied.[1]

---

[1] Trial is scheduled for July 24, 2007, at 9:30 a.m.

## 1. **FINDINGS OF FACT**

On October 18, 2006 at approximately 2:30 p.m., Agent Laney had completed his shift patrolling the area between Sells and Casa Grande, Arizona. (Tr. 10).[2] Agent Laney was driving a "large model truck" with a detention cage mounted on the back and was traveling northbound at about 60 miles per hour on Federal Route 15 (a two-lane road where the posted speed limit is 55 miles per hour) en route to the Border Patrol station in Casa Grande. (Tr. 11-12 & 35). At that time, Agent Laney came upon a small silver four-dour Honda sedan which was also traveling northbound at about 50 miles per hour. (Tr. 11 & ). As he was traveling faster than the Honda, he began to pass. (Tr. 12). As he effected the pass, he looked over to his right and could see a "blanket across the whole back seat [of the Honda] kind of high up." (Tr. 12).

Because it was typical for illegal loads, such as marijuana, to be covered in such a manner, and because he noticed the vehicle during a shift-change when illegal traffic increases due to decreased law enforcement coverage, Agent Laney pulled in front of the Honda and began to slow down. (Tr. 14-15). He wanted to see how the Honda's occupants would react to his presence; he was also trying to get a second look into the backseat. (Tr. 15). As Agent Laney suspected, as he slowed down to approximately 40 miles per hour, so did the Honda. (Tr. 16). Agent Laney concluded that the Honda's occupants did not want him to get another look into their vehicle. (Tr. 17).

Agent Laney proceeded to approximately Milepost 37 and pulled into a left turn lane and "basically came to a stop to allow them to – I wanted to get back behind them . . . ." (Tr. 17). This forced the Honda to pass him on the right-hand side. (Id.) After the vehicle

---

[2] "Tr" refers to the Transcript of Motion Hearing dated June 28, 2007, and filed with the Clerk on July 2, 2007. *Docket No. 39*.

- 2 -

1  passed, Agent Laney immediately pulled in behind it and called in the license plates; he was
2  informed that the vehicle was registered to Paul Zaragoza out of Eloy, Arizona. (Id.). Agent
3  Laney then activated his emergency equipment and the Honda "yielded right away." (Tr.
4  18).           After the stop, and while Agent Laney was still on the radio, the driver (Rudy
5  Espinoza) and the passenger (Zaragoza) exited their vehicle and, leaving their doors open,
6  began walking toward the rear of the Honda. (Tr. 19). Agent Laney then told them to sit at
7  the rear of the Honda and they complied immediately. (Id.) The agent then began to walk
8  toward the Honda to determine what was in the vehicle. As he approached the rear bumper,
9  "it had a pretty good smell of marijuana coming out of it . . . ." (Tr. 20). Then, as he reached
10 the rear window, he could see the edges of bundles of marijuana under the blanket in the
11 backseat and on the floorboard. (Tr. 20). Agent Laney then opened and closed the back door
12 of the vehicle, saying, "Uh, oh, this looks like trouble." (Tr. 21). He asked the occupants if
13 he could look in the trunk of the vehicle. (Id.) He does not recall an audible response, but
14 Rudy Espinoza did throw him the trunk keys. (Id.)

15    Shortly thereafter, a Field Operations Supervisor arrived and took photos of the
16 vehicle. (Tr. 21-22; Exhibits 1 & 2 (photos)).

17 **2.     CONCLUSIONS OF LAW**

18       **1.     Legality of the Stop**

19    Zaragoza moves to suppress the evidence seized following the stop of the vehicle he
20 was driving, alleging that reasonable suspicion that would support the stop did not exist. The
21 Fourth Amendment protects the right of the people to be secure in their person, houses,
22 papers, and effects against unreasonable searches and seizures. *U.S. v. Hensley*, 469 U.S.
23 221, 226 (1985). In *Terry v. Ohio*, 392 U.S. 1, 88 (1968), the Supreme Court held that,
24 consistent with the Fourth Amendment, police may stop persons in the absence of probable
25 cause under limited circumstances. The Court has held that law enforcement agents may
26 briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are
27 involved in criminal activity. *Hensley*, 469 U.S. at 226.

28

1 Reasonable suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 416-18 (1981). When assessing the reasonableness of the police officer's actions, the court must consider the totality of the circumstances which confronted the officer at the time of the stop. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). In relation to border stops, the Supreme Court has identified a number of factors to be taken into account when deciding whether a border protection officer has reasonable suspicion to stop and interrogate an individual. They include: (1) the characteristics of the area and its proximity to the border; (2) usual patterns of traffic in the area; (3) previous experience with alien traffic; and (4) information about recent illegal border crossings in the area. *U.S. v. Brignoni-Ponce,* 422 U.S. 873, 884-85 (1975). "In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling. *Id.* at 885 (citing *Terry,* 392 U.S. at 27). The articulable facts forming the basis of a reasonable suspicion must be measured against an objective reasonableness standard, not by the subjective impressions of a particular officer. *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1445 (9th Cir. 1994).

Here, the agents' stop of the vehicle in which Zaragoza was traveling was supported by reasonable suspicion. Zaragoza's argument that it was not is based largely on the contention that the agent would have been unable to see into the rear of the Honda and identify the blanket covering the marijuana. Agent Laney's testimony, however, was credible and uncontradicted on this point. He was driving a tall vehicle and, despite tinting of both his vehicle's and the Honda's windows, he stated it was bright enough at the time to see down into the backseat of the Honda. He then sought to bolster his suspicion about the illegal nature of the contents of the Honda by slowing to see if the Honda would re-pass his vehicle. As he suspected however, the Honda also slowed, attempting to remain behind him until he forced it to pass by pulling into the left-turn lane. Considered in light of the area in which he was traveling and that it was during a shift change, the facts relied on by Agent Laney were sufficient to establish reasonable suspicion for the stop of the vehicle.

### B.     Legality of the Search

Zaragoza also contends the search of the vehicle was illegal. Once probable cause exists to believe that a motor vehicle contains contraband and the vehicle can be moved, officers may conduct a warrantless search fo the vehicle and the scope of the search is as broad as a magistrate could authorize through a warrant. *California v. Carney*, 471 U.S. 386, 394-95 (1985). "This rule is known as the 'automobile exception' to the general rule that the police must obtain a warrant before executing a search." *United States v. Pinela-Hernandez*, 262 F.3d 974, 978 (9th Cir. 2001) (citations omitted). Probable cause requires a reasonable belief, evaluated in light of the officer's experience, that contraband would be found in the place to be searched. *United States v. Perez*, 67 F.3d 1371, 1375 (9th Cir. 1995). Here, Agent Laney smelled marijuana emanating from the vehicle as he approached. This fact, coupled with those associated with the stop, provided probable cause for his search of the vehicle.

### 3.     RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule – Civil 72.1, Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Defendant Paul Zaragoza's Motion to Suppress Evidence [Docket No. 20].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CR 06-1913-TUC-**

- 5 -

1. **FRZ**.  Failure to timely file objections to any factual or legal determination of the Magistrate
2. Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.
3. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).
4.     DATED this 6th day of July, 2007.

*[signature]*
Jacqueline Marshall
United States Magistrate Judge